IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Crim. No. WMN-98-210 |
| | * | |
| **DARREL ANTONIO BURRELL** | * | |

*************

### GOVERNMENT'S MEMORANDUM IN AID RESENTENCING

The United States of America, by and through undersigned counsel, Rod J. Rosenstein, United States Attorney for the state and district of Maryland, and Jamie M. Bennett, Assistant United States Attorney for said district, hereby respectfully files this Memorandum in Aid of Resentencing.

### FACTUAL BACKGROUND

On March 13, 2000, a guilty verdict was returned against Darrell Antonio Burrell on Counts One and Two of the First Superseding Indictment, charging him with conspiracy to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §846 and 841 (a)(1) (Count One ) and murder in furtherance of a drug conspiracy, in violation of 21 U.S.C. 848(e)(1)(A) (Count Two). On May 26, 2000, Mr. Burrell was sentenced to life imprisonment on Count Two, the court having determined that Counts One and Two merged for purposes of sentencing.  On June 10, 2004, after Burrell's conviction on Count Two was vacated because it was obtained in violation of his statutory right to two attorneys on a death eligible count, Burrell was resentenced to a term of life without parole on Count One of the First Superseding Indictment.  That sentence reflected an offense level of 43 under the U.S. Sentencing Guidelines, based upon the application of the first degree murder cross reference set forth in U.S.S.G. §2A1.1 and referenced in U.S.S.G. §2D1.1(d)(1).  The Court

1

determined, based upon the evidence offered at trial, that Burrell had, in fact, committed the murders of Silvester Snider and Antwan Greer in furtherance of the drug conspiracy.

Burrell appealed from this second sentence, and while the appeal was pending, the Supreme Court decided *United States v. Booker*, 543 U.S. 220 (2005), holding that the mandatory application of the United States Sentencing Guidelines to impose a sentence in excess of what would be permitted by the jury verdict alone violated the Sixth Amendment. On April 25, 2006, the Fourth Circuit remanded Burrell for resentencing once again, in keeping with *Booker*, which held that all sentences that had been imposed under the mandatory sentencing regime that had been in place prior to *Booker* were erroneous whether the sentence imposed violated the Sixth Amendment or not. Although there is nothing in the Fourth Circuit remand to suggest that this is anything but a garden-variety post-*Booker* remand, Burrell now argues that this Court is **prohibited** by the terms of the Fourth Circuit's remand from using the murder cross-reference to calculate his guideline range upon resentencing. Burrell does not explain what it is about his case, or the terms of his remand, that would make him different from the dozens of other defendants who have been resentenced since *Booker* to life sentences based upon the murder cross-reference with the Courts finding facts by the preponderance of the evidence to support the application of that guideline section.

In fact, there is nothing that distinguishes Burrell's case from those other cases, as the discussion of post-*Booker* law in the Fourth Circuit will makes clear. If Burrell is not re-sentenced to life for the two murders that he committed, that result will fly in the face of clear Fourth Circuit precedent, and will seriously undermine the goal of the Sentencing Guidelines – advisory or mandatory – to impose sentences that match the seriousness of the crime and to avoid sentencing disparities.

**ARGUMENT**

I. **THIS COURT IS NOT BARRED BY THE TERMS OF THE REMAND FROM USING THE MURDER CROSS-REFERENCE TO CALCULATE BURRELL'S NEW SENTENCE.**

A. **The Use Of The Murder Cross Reference To Enhance Burrell's Sentence Is Neither Unlawful Under Booker Nor Barred By The Fourth Circuit's Remand.**

As noted, Burrell argues that the terms of the remand in this case prohibit the Court from using the cross-reference for first degree murder to sentence him to life in prison without parole. Burrell relies, apparently, on a statement in the Fourth Circuit's opinion that says the following: that because "[t]he facts used to enhance Burrell's sentence pursuant to the murder cross-reference were neither found by the jury nor admitted by Burrell . . . . in light of *Booker*, Burrell's sentence was erroneous." Since Burrell was sentenced pre-*Booker*, when this Court understandably treated the Sentencing Guidelines as mandatory, rather than advisory, of course his sentence was erroneous "in light of *Booker*." That is not, in any way, a judgment by the Fourth Circuit that the application of the murder cross-reference itself was erroneous, as the defendant argues. It is solely a judgment that being sentenced to life under a mandatory sentencing scheme is erroneous under the Sixty Amendment, as the *Booker* court held.

The Fourth Circuit went on to note that although this Court had stated that it would give the same sentence even if the murder cross-reference did not apply, because of Burrell's status as a Career Offender, "[t]he court did not make clear that it would have given the same sentence if the guidelines were advisory rather than mandatory, and we decline to speculate as to whether the court would have imposed the same sentence under the now-advisory guidelines." *Id*. at 4-5. But the Fourth Circuit made it clear that had this Court done so, it would have been proper and a remand

3

would not have been necessary, saying "[b]ecause we cannot conclude from the record before us that the district court would necessarily have applied the same sentence if it had considered the guidelines to be advisory, we must vacate Burrell's sentence and remand the case for resentencing. The language of this remand does nothing but repeat what by then was black letter post-*Booker* law, that "[o]n remand, the district court should first determine the appropriate sentencing range under the guidelines, *making all factual findings appropriate for that determination*." *Id*. (Emphasis added.)

Contrary to what Burrell now argues, the Supreme Court, in *United States v. Booker*, did not hold that the sentencing court could not make factual findings by a preponderance of the evidence, nor did it hold that the murder-cross reference could not be employed unless the defendant was convicted of murder by a jury. The Supreme Court simply held in *Booker* that the Sixth Amendment was violated when a district court, treating the Sentencing Reform Act and the Sentencing Guidelines as mandatory, imposed a sentence greater than the maximum authorized by the facts found by the jury alone. 543 U.S. at 243. The Court noted that by virtue of enacting §3552(b)(1), Congress had made the Sentencing Guidelines mandatory and binding on all judges and concluded that under its decision in *Blakely v. Washington*, ___ U.S. ___ (2004), which set aside a similar state sentencing scheme on constitutional grounds, mandatory enhancements based on facts found solely by a court and not by the jury violated the Sixth Amendment imperative that "any fact (other than a prior conviction), which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id*.

Having determined that the mandatory federal sentencing regime was unconstitutional, the Supreme Court next addressed the appropriate remedial scheme that could best effectuate Congress'

intent in passing the Sentencing Reform Act. The Court rejected a scheme that would preserve the mandatory nature of the Sentencing Guidelines by grafting on to them a requirement that all facts providing the basis for enhancements must be found by a jury. Instead, the Court ruled that Congress would have preferred a solution that rendered the guidelines advisory and restored to the district courts the discretion they had exercised prior to the passage of the Sentencing Reform Act, to impose sentences anywhere within the range prescribed by the statues of conviction, so long as those sentences were reasonable.

The Fourth Circuit has ruled, along with its sister circuits, that what *Booker* means is simply that "the discretion of a sentencing court is no longer *bound* by the range prescribed by the guidelines." *United States v. Hughes*, 401 F.3d 540, 546.(4th Cir. 2005)(emphasis added.). But *Booker* does not mean that the Sentencing Guidelines are irrelevant. Under *Booker*, the sentencing courts are still required to "consult [the] Guidelines and take them into account when sentencing. " In *Hughes*, the Fourth Circuit provided explicit instructions for how a district court should go about calculating an appropriate guidelines range post-*Booker*, saying that the

> [D]istrict courts shall first calculate (after making the appropriate findings of fact) the range prescribed by the guidelines. Then the court shall consider the range as well as other relevant factors set forth in the guidelines and those factors set forth in §3553(a) before imposing sentence. If the court imposes a sentence outside the [now advisory] guideline range, it should explain its reasons for doing so . . . and we will affirm the sentence imposed as long as it is within the statutorily prescribed range and is reasonable.

This remedial scheme applies not only to those defendants whose sentences have been imposed in violation of the Sixth Amendment, but to any defendant who has been sentenced under the mandatory Sentencing Guidelines regime without suffering a constitutional violation. *Id*. at. 546.

The Fourth Circuit has also made clear that just because a Sixth Amendment error occurred in the original sentencing of a defendant under the mandatory sentencing regime in place before *Booker* was decided, does not necessarily mean that the sentence was incorrect or that the defendant may not receive the same sentence once he is sentenced under the remedial scheme set forth in *Booker*. As the Fourth Circuit noted in *Hughes*,

> [T]he Booker Court recognized that the Sentencing Reform Act and the guidelines, if applied as written, would in some cases result in violation of defendants' Sixth Amendment rights through the mandatory use of extra-verdict enhancements. The Court remedied this Sixth Amendment problem by making the Guidelines "effectively advisory" in all cases, so that a jury verdict of guilt would authorize a sentence up to the maximum set by the statute of conviction.

*Id*. at 552. A district court, using the advisory guidelines and exercising its sentencing discretion, may sentence a defendant any where within the statutory maximum set forth for the statute of conviction, so long as that sentence is reasonable. In Burrell's case, the statute of conviction (21 U.S.C. §841(a)(1)) authorizes a term of life imprisonment without parole and this Court has the discretion to sentence the defendant to any term of imprisonment within that statutory maximum, so long as the sentence is reasonable. A sentence of life is eminently reasonable for a defendant who has committed not one, but two, cold-blooded murders in furtherance of a drug conspiracy.

Burrell argues that this Court may not make any factual findings to support a guideline range that is at all higher than the most bare bones reading of the Indictment. According to Burrell the Court may consider only the fact that he was convicted of conspiring to distribute five kilograms of cocaine. But, putting aside for the moment the fact that Count One of the Indictment, accuses Burrell not of selling drugs but of being an enforcer for a violent cocaine organization and committing two murders to fulfill that role, what Burrell argues here is s not at all what *Booker*

requires. The Fourth Circuit's remand does not contain a secret message that the Court believes Burrell, unlike the dozens of other defendants who have been resentenced under *Booker* to life in prison for murders committed in connection with drug trafficking, should for some reason not also be so sentenced upon remand. In fact, if Burrell is not sentenced to life based upon judicial fact-finding that he committed two murders, and using the murder cross-reference as an advisory guideline range, that result will fly in the very face of all of the post-*Booker* decisions issued by the Fourth Circuit cited below.

To repeat, *Booker* and its progeny in the Fourth Circuit, have made it abundantly clear that in determining the appropriate sentence, the sentencing courts should consult the guidelines and calculate an advisory guideline range, *making all necessary factual findings*. The *only* thing the sentencing court may not do it to treat that advisory guideline range as if it were mandatory. Instead, the Court must state the reasons it has decided to adopt of reject the advisory guidelines range, taking into consideration the factors set forth in §3553(a). Once the sentencing court does so, and pronounces sentence, that sentence will be affirmed if it is within the statutory maximum set forth in the offense of conviction, and is reasonable.

The cases that support this proposition are legion, starting with the Fourth Circuit's decision in *Hughes*. In that case, the defendant was convicted of five counts of bankruptcy fraud and perjury. At Hughes' pre-*Booker* sentencing, the district court grouped the five counts together pursuant to U.S.S.G. §3D1.2(2000) and enhanced the base offense level of 6 under the fraud guidelines, §2F1.1 a total of 14 points: for the amount of loss greater than $200,000; for more than minimal planning; for commission of an offense during a bankruptcy proceeding; for abuse of a position of trust; and for obstruction of justice, arriving at a final offense level of 22, a Criminal History Category of I and

7

a guideline range of 41 to 51 months. Hughes was sentenced to a term of 46 months.

The Fourth Circuit remanded for resentencing under *Booker*, finding that the imposition of a sentence exceeding the maximum authorized by the jury findings alone violated his Sixth Amendment rights and instructing the district court to resentence the defendant under the remedial scheme set forth in *Booker*. In so doing, however, the Court made clear that it was the process of sentencing the defendant under a mandatory sentencing regime, and not the outcome, that had violated the defendant's Sixth Amendment's rights. The Fourth Circuit clearly believed that the district court would use the same sentencing factors to arrive at the same sentence through the exercise of its discretion on remand, going so far as to determine that the enhancements upon which the district court relied at the first sentencing had been properly applied as a matter of law. *Id.* at 556-59.

It is important to note that if Burrell's interpretation of *Booker* were correct, the *Hughes* sentencing court would not have been able to consider the enhancements for the amount of loss, more than minimal planning or abuse of a position of trust, because these factors were not found by a jury beyond a reasonable doubt. There is no difference between enhancing a sentence for the amount of the loss or the commission of a murder under the Sentencing Guidelines, and before this Court accepts Burrell's position that his sentence may not be enhanced based upon fact finding by this Court, it must force him to explain why Hughes' sentence could be so enhanced and his may not.

*Hughes*, and other post-Booker decisions by the Fourth and other Circuits completely reject the argument Burrell makes here, that a defendant may not be sentenced post-*Booker* based upon any judicial fact findings. If the language and holding of *Hughes* does not make the point clearly enough, the Court may refer to a number of other Fourth Circuits decisions that foreclose the defendant's

argument completely. In *United States v. Smalls*, 185 Fed. Appx. 218 (4th Cir. 2006), for example, Smalls pled guilty to conspiring to distribute and to possess with intent to distribute an unspecified quantity of cocaine and cocaine base in violation of 21 U.S.C. §§841(a)(1) and 846 and of possession with intent to distribute an unspecified quantity of cocaine base in violation of 21 U.S.C. §841(a)(1) and was sentenced to 480 months imprisonment based upon a judicial finding that a victim was murdered in furtherance of the drug conspiracy. Smalls challenged his sentence on appeal, arguing that the district court violated his due process rights by sentencing him based upon facts that were not found by a jury, but which were determined by the judge based upon the preponderance of the evidence. The Fourth Circuit disagreed, holding that "[a]fter the Supreme Court's decision in *Booker*, a sentencing court must still calculate and consider the guideline range, as well as consider the factors set forth in 18 U.S.C.A. §3553(a). Further, sentencing courts are not obligated, post-*Booker*, to determine enhancements by a higher standard." *Id*. The Fourth Circuit cited a string of cases from other circuits approving the use of the preponderance of the evidence standard to determine sentencing factors, post-*Booker*. *Id.*

      The Fourth Circuit stated the rule that applies to the facts before this Court even more clearly in *United States v. Dublin*, 189 Fed. Appx. 151 (4th Cir. 2006). In that case, the defendant agreed to plead guilty to possession with intent to distribute 50 grams of crack, in violation of 21 U.S.C. § 841(a)(1) and to cooperate with the authorities to provide truthful information about his drug activities and the murder of James Barrow, a government informant. Although Dublin was equivocal about his role in the killing of Barrows, his participation was confirmed by one of his co-conspirators, who testified to the facts of the murder during Dublin's sentencing hearing. Dublin was sentenced to life in prison, based upon his role in the drug-related murder of Barrows.

On appeal, Dublin contended that he should not have been sentenced for murder when he had not been convicted of murder by a jury. The Fourth Circuit flatly rejected that argument, noting that the defendant had pleaded guilty to, and was convicted of, at least one drug-related charge that carried a possible sentence of life. The Fourth Circuit made it clear that the defendant was notbeing sentenced for murder, but rather "for violating our nation's drug laws," noting that the defendant's role "in the drug-related killing of a government informant simply provided the district court greater discretion to sentence them to the maximum punishment authorized by law for these drug- related charges, namely, life in prison." *Id.* at \*153. The exact same thing could be, and likely will be, said of Burrell by the Fourth Circuit when appeals from his post-*Booker* sentence to lif in prison.

The Fourth Circuit went on to specifically discuss the impact of *Booker* on Dublin's sentence, holding that "under our now advisory sentencing guidelines, where a defendant is convicted of violating 21 U.S.C. § 841(a)(1) or 846 and a victim was killed under circumstances that would constitute murder under 18 U.S.C. §1111 had such killing taken place within the territorial or maritime jurisdiction of the United States, **the sentencing court *should* look to the base offense level used for first degree murder, which is 43**." *Id.* (emphasis added).   Similarly, in *United States v. Felder*, 2006 WL 2591665 (4th Cir. 2006), another post-*Booker* Fourth Circuit case, the defendant pled guilty to one count of armed robbery and one count of felon in possession of a firearm and was sentenced to a term of imprisonment of 480 months based upon the application of the murder cross-reference. On appeal, Felder argued that the district court's application of the murder cross-reference was improper because the testimony presented at the sentencing hearing was inconsistent, and because the sentencing court had made its finding that the cross-reference applied based upon a preponderance of the evidence standard. The Fourth Circuit affirmed the use of the

10

murder cross-reference, once again holding that "sentencing factors should continue [post-*Booker*] to be based on the preponderance of the evidence. As Felder's sentence was imposed post-Booker, the district court's use of the preponderance of the evidence standard was proper." *Id*. at *1.

Similarly, in *United States v. Patterson,* 2006 WL 2620174 (4th Cir. 2006), the Fourth Circuit considered an appeal after a limited remand for resentencing under *Booker* in which the defendant challenged the 262 month sentence imposed on his conviction for conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C. §§841(a)(1) because the sentencing court had arrived at his sentence by using the cross-reference for first degree murder. The Fourth Circuit affirmed the sentence, specifically finding that the district court properly applied the guidelines and that the sentence imposed was reasonable.

In *Patterson*, the defendant contended, as Burrell does here, that his sentence was unlawful because the district court made findings that increased his sentence beyond what it would be based only on facts found by the jury, but the Fourth Circuit held that "[w]hile it is true that the district court made such factual finding, this does not result in an unlawful sentence, as long as the sentence does not exceed the limits of the statute of conviction. Indeed, after *Booker*, the sentencing court is authorized to make factual findings in order to appropriately determine the defendants advisory range under the guidelines. These authorized factual findings would include a finding as to whether a "victim was killed under circumstances that would constitute murder under 18 U.S.C. A. §1111" which would require application of the murder guideline provision." *Id*. at *1.

Patterson also argued that the district court's decision to apply the murder cross-reference was erroneous because the jury had acquitted him of the firearms conspiracy charge that specifically alleged his participation in the home invasion that resulted in the death of the victim and that this

11

meant that the jury had rejected evidence that he had caused or participated in events that caused, the victim's death. The Fourth Circuit noted that this was not necessarily the case, holding that "even if the jury did reject the evidence concerning Patterson's participation in the home invasion, we have previously held that a sentencing court may enhance a defendant's sentence based on its findings of conduct by a preponderance of the evidence, even if the jury acquitted the defendant of that conduct." *Id*. Despite Burrell's arguments to the contrary, these cases prove that very little has changed in federal sentencing since *Booker*, except for the fact that the sentencing courts may no longer view the Sentencing Guidelines as mandatory.

Finally, in *United State v. Montgomery*, 132 Fed. Appx. 490 (4th Cir. 2005), a case with which this Court is intimately familiar, the Fourth Circuit approved, post-*Booker*, the use of the murder cross-reference to sentence a defendant who had not even been directly implicated in any of the murders committed by the drug organization he supplied, concluding that "the murder was a foreseeable consequence of the drug conspiracy and . . . that the district court's application of the [murder cross reference] was not erroneous." Although the Fourth Circuit remanded that case for resentencing under the remedial scheme set forth in *Booker*, it held that "[o]n remand after considering the factors under §3553(a), *the district court may impose the same sentence*." *Id (emphasis added)*. At resentencing the court must make appropriate factual findings under the Guidelines and take into account the factors set forth in Section 3553. To do this, the Court must consider whether the defendant committed premeditated, first degree, murder "by a preponderance of the evidence." The government relies on the trial record which clearly establishes, even by a much higher evidentiary standard, premediated, first degree murder. (The factual record in this case is discussed in greater detail in Section B, *infra*.) Having appropriately made this finding, the Court

should re-apply the first degree murder guidelines and consider those guidelines as one factor in determining what the sentence should be.

**B. The Jury Necessarily Found Burrell Guilty of Murder To Find Him Guilty Of The Drug Conspiracy And The Fourth Circuit Has So Held.**

It is abundantly clear that Burrell committed first degree murder. The Superseding Indictment, and the evidence the government presented to the jury, made crystal clear that Burrell's *sole* role in the drug conspiracy was that of an enforcer and that he killed two victims, Antwan Greer and Silvister Snyder, to protect the Addison drug organization from its rivals. The Fourth Circuit so found in considering and rejecting Burrell's attack on his conviction for insufficient evidence. In *United States v. Ray*, 2003 WL 1343002 (4th Cir. 2003), the Fourth Circuit noted that "[a]ccording to the evidence presented by the government, neither Ray nor Burrell actually dealt drugs or supervised the drug distribution operations for the gang." *Id*. at *44- 45. The Fourth Circuit further stated that "[a]lthough both defendants were convicted of conspiracy to distribute cocaine as well as killing while engaging in a drug conspiracy, their alleged participation in the drug conspiracy stems solely from their participation in the killings." *Id*. The Fourth Circuit also described Burrell's relationship with the Addison conspiracy as follows: "[d]espite the fact that Burrrell was not involved in the drug distribution, McLeod provided Burrell with money from drug proceeds at least "five to six times," always at the request of Addision. *Id*. at *42.

The evidence of Burrell's involvement in the murders was more than enough for the Fourth Circuit to conclude "that Addison had instructed Burrell to protect Addison's drug distribution operation by killing Greer and Snider, who had been shooting at Chapel Hill Gang members in the area and disrupting his drug operation." *Id*. at * 51. The Fourth Circuit noted, among other things,

that the evidence proved that Addison told his co-conspirators not to worry about the rival drug gang because he had Burrell "on top of it;" that Burrell actually shot the two victims in question; and that Burrell was paid from drug proceeds after the killings, concluding that "Burrell's argument that the government presented insufficient evidence to support his conviction is without merit." *Id*. at \*\* 51-52. Under these unique circumstances, it is not correct to conclude that the Court would be relying upon facts not found by the juror to enhance Burrell's sentence if it used the murder cross reference to enhance his sentence in violation of the precepts of *United States v. Booker*. However, with evidence this strong, there is no question that the Fourth Circuit will approve the Court's finding by a preponderance of the evidence that Burrell committed two murders as alleged, and that the application of the cross-reference is proper.

  **C.  Alternatively, an Upward Departure Is Appropriate**

  Alternatively, the Court can depart to take into account the fact that Burrell committed two murders in furtherance of the drug conspiracy in determining his sentence under the guidelines and such a departure would be fully justified by Burrell's criminal history and his role as a mercenary in the Addison drug organization. There is simply nothing in the *Booker* decision or the Fourth Circuit's remand that prevents a departure given the circumstances of this case.

  Any departure would start from a base offense level of at least 32, which is the offense level that the defendant concedes applies to the distribution of five kilograms or more of cocaine. That base offense level should be enhanced by two levels for possession of a gun in connection with a drug trafficking crime, which would result in a total offense level of 34. Burrell has a Criminal

History Category of VI. [1]   The guideline range for a offense level 34 and a Criminal History Category of VI is 262 to 327.

As noted, Burrell committed two murders of members of a rival drug gang in return for payment in money and drugs.  And, these crimes were the culmination of a life that has been far from law abiding.  Indeed, by age 21, Burrell had seven convictions, two of them for battery.  There is absolutely nothing in his record that mitigates these crimes, or suggests that he is capable of reform.  A departure of three levels would be more than reasonable to take into account the fact that the defendant murdered two individuals, and that departure would bring the total offense level to a level 37, which would yield a guideline range of 360 to life.  The Court would also be well within its discretion to determine that two murders merits an even greater departure, to a level 43, which would be mandatory life.

### D.   Under Section 3553(e), A Life  Sentence is Reasonable and Appropriate.

Under any analysis of the factors set forth in Section 3553(a)(2), the court should impose the highest sentence available to it.  Under Section 3553 (a)(2) the Court must first consider the nature and seriousness of the offense which clearly requires a harsh and lengthy sentence, to find otherwise would minimize the lives of the men that were taken by Darrell Burell.  The Court must also consider the need for the sentence imposed "to promote respect for the law."  This defendant had

---

[1] Burrell argues that he is not a Career Offender, because the government cannot prove that he has two prior convictions that qualify as "crimes of violence" under the recent Supreme Court decision in *United States v. Shepard*, ___ U.S. ____ (2005).  Although the government has tried, it has been unable to locate certified copies of Burrell's 1986 and 1991 battery convictions.  However, the government's inability to prove that Burrell was convicted of crimes of violence for purposes of the Career Offender provisions of the Sentencing Guidelines does not affect the computation of his criminal history points for those convictions, which are based solely upon the length of the sentence, and not on the character of the offense.

no respect for the law, as his criminal history makes clear. Indeed, at the age of eighteen, Burrell received his first conviction when he accosted an off-duty police officer who was at a gasoline station and tried to hit him. The defendant also has a prior gun conviction. The need to avoid unwarranted sentencing disparities also supports the forty-year sentence. Defendants who murder two individuals in aid of drug organizations typically are sentenced to much life in prison without parole in the federal system. To sentence this defendant to less, is clearly unreasonable.

By a careful review of the defendant's sentencing letter, the only factor argued with any force is the defendant's long-term relationship with Ms. Hite and her daughter. This relationship apparently began in 1988, beginning while Mr. Burrell was under probation supervision for prior convictions and continuing as Burrell racked up at least three more convictions, one for possession of a handgun, one for battery and one for drug possession and while he served several years in prison for those offenses, and for violations of his parole at a time when his girlfriend was employed by the Maryland Department of Corrections. Yet, incredibly, Ms. Hite told the United States Probation Officer in 2000 that she "would never have allowed him to care for her daughter if she suspected him of being involved with illegal activities" and that "she would not have jeopardized her ten year career in the Division of Corrections by continuing a relationship with an individual involved in illegal activity." These statements call into question either Ms. Hite's veracity or her common sense: Just where did she think Mr. Burrell was when he was away from Baltimore serving time from 1991 until 1994? Either Ms. Hite's relationship with Mr. Burrell is not as close and grounding as his Sentencing Memorandum asserts, or she is willing to lie for him to help him reduce his sentence, just as she was willing to do at his trial when she supplied him with an alibi for a murder a half dozen people had seen him commit.

## **CONCLUSION**

For all these reasons, most particularly the nature and seriousness of the offense, Burrell's life sentence should be reimposed by the Court.

                                              Respectfully submitted,

                                              Rod J. Rosenstein
                                              United States Attorney

By:_____
       Jamie M. Bennett
       Assistant United States Attorney
       36 South Charles Street
       Fourth Floor
       Baltimore, Maryland 21201
       (410) 209-4800